| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 12-13457 |
| CECILIA SHANTA MILTON | ) | |
|      DEBTOR | ) | |
| | ) | |
| JOHN S. HODGE, TRUSTEE | ) | ADVERSARY PROCEEDING |
|      PLAINTIFF | ) | NO.: |
| | ) | |
| versus | ) | |
| | ) | |
| GLAY H. COLLIER, II, | ) | Bankruptcy Judge: Jeffrey P. Norman |
| GLAY H. COLLIER, II, LLC | ) | |
| McBRIDE & COLLIER, LLC | ) | |
|      DEFENDANTS | ) | |

## COMPLAINT

The complaint of John S. Hodge as the chapter 7 trustee, with respect, represents:

## JURISDICTION, STATUTORY PREDICATES AND JUDICIAL POWER

1.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (B), (E) and (O).

2.  The predicates for the requested relief are 11 U.S.C. §§ 105(a), 329, 362, 526, 528, 549, 550, 551 and Bankruptcy Rules 2016(b), 2017, and 7001(1).

3.  The claims presented in this complaint invoke substantive rights provided by the bankruptcy code and, by their nature, can arise solely in the context of a bankruptcy case. Therefore, this court has the authority to adjudicate all matters presented herein and has the power to enter a final judgment. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011)(in determining whether a bankruptcy court has authority to enter a final judgment, "the question is whether the action at

issue stems from the bankruptcy itself…”).

**VENUE**

4.     Venue of this action lies in this court pursuant to 28 U.S.C. § 1409 because the claims set forth below arose from or relate to a bankruptcy case pending in this court and each defendant resides in, or its principal place of business is located within, this district and all or a substantial part of the events or omissions giving rise to the claims occurred within this district.

**PARTIES**

5.     The plaintiff is John S. Hodge, the duly appointed chapter 7 trustee for the bankruptcy case.

6.     Made defendants (collectively the "**Defendants**") herein are:

a.     **GLAY H. COLLIER, II**, an attorney whose business address is 920 Pierremont Road, Suite 511, Shreveport, Louisiana 71106;

b.     **GLAY H. COLLIER, II, LLC**, a Louisiana limited liability company, which may be served through its registered agent for service of process, Glay H. Collier, II, 920 Pierremont Road, Suite 511, Shreveport, Louisiana 71106 (Glay H. Collier II and Glay H. Collier II, LLC are collectively hereinafter referred to as "**Collier**"); and

c.     **McBRIDE & COLLIER, LLC**, a Louisiana limited liability company, which may be served through its registered agent for service of process, Thomas C. McBride, 301 Jackson Street, Suite 101, Alexandria, Louisiana 71301.

**PRELIMINARY STATEMENT**

7.     Although the amount in controversy in this proceeding is relatively small – approximately $4,600 – the issues presented in this complaint are significant and reach far beyond

the parochial concerns of this case. The evidence clearly suggests that Collier, a mass filer of consumer bankruptcy petitions, perpetrated a fraud on this court and his own clients by seeking and collecting: (a) undisclosed compensation; (b) undisclosed costs; and (c) fees or expenses in excess of those permitted to be charged under this court's standing order governing "no look" fees in chapter 13 cases. The provisions of the standing order were well known to Collier because that order was the byproduct of a lawsuit that Collier filed against the prior bankruptcy judge concerning "no look" fees. *McBride & Collier vs. Callaway,* Case No. 09cv-1995, U.S. District Court, Western District of Louisiana. Collier's conduct in this case (and the other converted chapter 13 cases referenced below) is likely representative of his widespread practice. That practice is simply shocking, especially considering that Collier's clients entrusted their financial future to him and instead of helping them, he overcharged them (in some cases, such as the one here, by more than 10%) and then concealed those overcharges from the court. Collier's practice represents the ultimate irony – instead of a bankruptcy lawyer providing financial refuge from predatory creditors, he became such a creditor and used unlawful and deceptive practices to collect debts from his own clients. Given the egregious and intentional nature of the violation of federal law, including knowingly filing documents containing untrue statements which strike at the bankruptcy system's core foundation, this court should exercise its authority under § 526(c)(5)(B) of the bankruptcy code to impose an appropriate civil penalty against Collier which should include a monetary penalty as well as restrictions on his ability to render "bankruptcy assistance" to "assisted persons" in this district for compensation as a "debt relief agency."

## ALLEGATIONS AND CONTENTIONS

8. On December 14, 2012, Cecilia Shanta Milton (the "**Debtor**") filed a voluntary

petition for relief pursuant to chapter 13. [1]

9.     On February 26, 2013, this court entered an order confirming the Debtor's chapter 13 plan.

10.     On January 29, 2014, this court entered an order converting the bankruptcy case to one filed under chapter 7.

11.     By virtue of his appointment as interim trustee by the United States Trustee and pursuant to the provisions of §§ 701 and 702(d), John S. Hodge (the "**Trustee**" or "**Plaintiff**") serves as the chapter 7 trustee in the bankruptcy case.

12.     Pursuant to the provisions of § 541(a), upon the commencement of the bankruptcy case, an estate was created, comprised of all property, wherever located and by whomever held, including all legal and equitable interests of the Debtor in property as of the commencement of the case.

13.     Pursuant to the provisions of § 323(a), the Trustee holds all of the rights and responsibility for property of the estate and is the sole representative of the bankruptcy estate. *In re Grotjohn* 289 Fed.Appx. 702, 705 (5th Cir. 2008)("The bankruptcy trustee is vested with title to all assets of the estate and becomes the representative entity.").

14.     As the sole representative of the bankruptcy estate, and pursuant to the provisions of § 704(a)(1), the Trustee has a duty to collect and reduce to money the property of the estate, including all claims or causes of action arising under chapter 5.

15.     Pursuant to the provisions of § 704(a)(4), the Trustee has a duty to investigate the

---

[1] Unless otherwise noted, references to statutory sections or chapters will refer to title 11 of the United States Code.

financial affairs of the Debtor, including her financial transactions with her counsel.

16. At the time of the commencement of the bankruptcy case, the Defendants frequently advertised themselves on television and other media as providing bankruptcy services to consumer debtors. Those advertisements included a pitch for a "no money down" bankruptcy – both under chapter 7 and chapter 13. Under this "no money down" arrangement, the Defendants would advance all costs for filing a bankruptcy petition and then collect the costs and attorneys' fees after the bankruptcy petition is filed.

17. On or about December 7, 2012, the Debtor had a consultation with the Defendants concerning a potential "no money down" bankruptcy.

18. On December 7, 2012, the Debtor executed a "no money down bankruptcy agreement," a copy of which is attached hereto as **Exhibit 1**.

19. The "no money down bankruptcy agreement" is a one page document written on the Defendants' letterhead which does not contain a designated signature line for the Defendants and was not signed by any of them.

20. The "no money down bankruptcy agreement" provides that: (a) all attorneys' fees would be "paid through a confirmed chapter 13 plan" and the fees were "set by the court at $2,800.00;" and (b) certain costs paid by the Defendants on the Debtor's behalf would not be reimbursed by the Debtor.

21. Other than stating that all attorneys' fees would be "paid through a confirmed chapter 13 plan," the "no money down bankruptcy agreement" did not specify the terms of the payment of those fees.

22. After her consultation with the Defendants and her execution of the "no money

down bankruptcy agreement," the Debtor filed a chapter 13 bankruptcy petition.

23.     Contemporaneously with the filing of the Debtor's chapter 13 petition, the Defendants:

    a.     paid the filing fee to the clerk of court in the amount of $281.00;

    b.     filed a Disclosure of Compensation of Attorney for Debtor (the "**Fee Disclosure Statement**") pursuant to § 329 and Bankruptcy Rule 2016(b) which certified that prior to the commencement of the bankruptcy case, the Debtor agreed to pay Defendants $2,800.00 "for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case." (See, § 1); and

    c.     filed: (i) a chapter 13 plan (the "**Plan**"); (ii) a plan summary and notice (the "**Plan Summary**"); and (iii) an "Addendum to Chapter 13 Plan – Application and Notice for Attorney's Fees" (the "**Fee Addendum**").

24.     The Plan, the Plan Summary and the Fee Addendum each state that the Defendants' compensation shall not exceed $2,800.00. See, § II.(B)(1)(b) of the Plan and Plan Summary and § 1 of the Fee Addendum.

25.     In the Fee Addendum, the Defendants elected and requested compensation and reimbursement of advanced expenses under the standard "no look fee" option of $2,800. The Fee Addendum provided:

> "***Counsel hereby acknowledges that any advances made by counsel for filing fees or expenses pre-confirmation will be considered included in the no-look fee not to exceed $2,800.00***. Any expenses paid by Counsel prior to confirmation shall be itemized on the attorney disclosure statement pursuant to F.R.B.P. 2016 and Form B 203. Such expenses shall also be reflected in the plan and plan summary."

§ 1 Fee Addendum (emphasis added).

26. This court's Standing Order Regarding "No Look" Fees and Addendums in Chapter 13 Cases dated March 5, 2010 (the "**Uniform Fee Order**") which was signed by all of the bankruptcy judges of the Western District of Louisiana, provides:

> "A no-look fee not to exceed $2,800 will apply throughout the WDLA for Chapter 13 cases, subject to the adjustments set forth below. *Any advances made by debtor's counsel for filing fees or expenses pre-confirmation will be considered included in the no-look fee of $2,800*." (§ 1 emphasis added).

27. In ¶ 4 of the order confirming the Debtor's chapter 13 plan, this court stated:

> Any compensation **or reimbursement of advanced expenses** for debtor's counsel set forth herein that is contrary to the WDLA Bankruptcy Judges Standing Uniform Order of March 5, 2010 is **DENIED** and **NOT APPROVED** by this Order. (emphasis added).

28. The Uniform Fee Order, Confirmation Order and Fee Addendum are clear on what an attorney may seek and may collect, as well as what is required to be disclosed. Despite their clarity, the Defendants unlawfully sought and collected reimbursement from the Debtor for the filing fee ($281.00) which had been advanced by them on the Debtor's behalf.

29. Using property of the estate, the Debtor paid $281.00 to the Defendants in the following equal installments:

    a.    $70.25 on December 14, 2012;

    b.    $70.25 on December 31, 2012;

    c.    $70.25 on January 13, 2013; and

    d.    $70.25 on January 25, 2013.

Copies of the receipts for all installment payments are attached as *in globo* **Exhibit 2**.

30. Using property of the estate, the chapter 13 trustee paid attorneys' fees in the amount of $2,800.00 to the Defendants, as set forth in the chapter 13 trustee's final report.

31.     The Defendants created an illusion of a law firm providing services to consumer debtors in chapter 13 cases for a regulated fee of $2,800, but in reality they created a scam whereby they would charge an amount exceeding the regulated fee which, in this case, amounted to a surcharge of more than ten (10%) percent of the maximum fee allowed by law.  The payment of the Defendants' unlawful fee siphoned off funds from the Debtor at the expense of the bankruptcy estate and its creditors.

32.     It is a federal crime for an attorney for a debtor in a bankruptcy case to knowingly and fraudulently enter into any agreement for the purpose of fixing the fees or other compensation to be paid to an attorney.  18 U.S.C. § 155 provides:

**Fee agreements in cases under title 11 and receiverships**

Whoever, being a party in interest, whether as a debtor, creditor, receiver, trustee or representative of any of them, or attorney for any such party in interest, in any receivership or case under title 11 in any United States court or under its supervision, knowingly and fraudulently enters into any agreement, express or implied, with another such party in interest or attorney for another such party in interest, for the purpose of fixing the fees or other compensation to be paid to any party in interest or to any attorney for any party in interest for services rendered in connection therewith, from the assets of the estate, shall be fined under this title or imprisoned not more than one year, or both.

33.     It is also a federal crime for any person to knowingly and fraudulently make a false declaration or statement in a bankruptcy case, 18 U.S.C. § 152(3), or a false or fraudulent representation in a bankruptcy case in connection with a scheme to defraud, 18 U.S.C. § 157(3).

34.     The Defendants' fraudulent fee arrangement in this bankruptcy case is similar to fraudulent arrangements entered into other bankruptcy cases which started in chapter 13 but later converted to chapter 7, including:

a.     **Case No. 13-10967 (Taylor)**; This case was filed on 04/23/2013.  Defendants

advanced the first installment of the filing fee of $141. Thereafter, Defendants received $2,800 under the plan, plus they received reimbursement from the debtor for the entire filing fee for a total compensation of $2,941.00.

b.    **Case No. 13-12321 (Baker)**; This case was filed on 09/11/2013. Defendants advanced the first installment of the filing fee of $141. Thereafter, Defendants received $2,662.70 under the plan, plus they received reimbursement from the debtor for the entire filing fee for a total compensation of $2,803.70.

35.    After the chapter 13 trustee paid the attorneys' fees due under the Plan, the Debtor filed a motion to convert the bankruptcy case to one filed under chapter 7.

36.    Prior to the conversion of the case, the Debtor entered into a retainer agreement with Collier which required the Debtor to pay an additional $1,600.00 for matters related to the conversion. A copy of the chapter 7 retainer agreement dated January 24, 2014, as **Exhibit 3**.

37.    On January 24, 2014, the Debtor executed a pre-conversion ACH / Debit Authorization Form which authorized Collier to make periodic withdrawals from the Debtor's bank account. A copy of the ACH / Debit Authorization Form is attached hereto as **Exhibit 4**.

38.    For services related to the conversion of the case to chapter 7, the Debtor paid Collier a down-payment of $155.00 plus she made periodic installments post-conversion totaling $1,358.00, all as set forth in the bank statements attached hereto as **Exhibit 5**.

39.    The Defendants received total compensation in this case of **$4,594.00**, consisting of the following payments:

a.    $281.00 for reimbursement of filing fee by Debtor;

b.    $2,800.00 for attorneys' fees paid under the plan;

c.    $155.00 for a down-payment for conversion to chapter 7; and

d.    $1,358.00 paid by Debtor post-conversion pursuant to an ACH debit agreement.

40.    Defendants did not disclose their agreement to receive more than $2,800 for services rendered in this case, in contravention of the provisions of § 329(a) which places an affirmative duty on debtor's counsel to fully and completely disclose all fee arrangements and all payments, beginning one year before the date of the filing of the bankruptcy petition. Section 329(a) provides, in pertinent part:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

41.    Defendants also failed to comply with the disclosure requirements set forth in Bankruptcy Rule 2016(b), which requires disclosure of any payment to a debtor's attorney for fees or costs:

> (b) Disclosure of compensation paid or promised to attorney for debtor. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code, including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

42.    Courts have uniformly interpreted § 329(a) and Bankruptcy Rule 2016(b) to require the attorney's full and complete disclosure of any payment made by, for, or on behalf of a debtor as well as any agreement relating to compensation. *In re Dellutri Law Group*, 482 B.R.

642, 647-648 (Bkrtcy.M.D.Fla. 2012)(collecting cases). "This disclosure mandate arises beginning one year pre-petition and is a continuing disclosure requirement while the bankruptcy case remains pending. See Bankruptcy Rule 2016(b) (last sentence);" *Id.*; see also Bankruptcy Rule 2017(b). This is due to Congress' concern that such transactions with attorneys may present "serious potential for evasion of creditor protection provisions of the bankruptcy laws," and a "serious potential for overreaching by the debtor's attorney," and therefore such transactions are subjected to "careful scrutiny." See H.R.Rep. No. 95–595, at 329 (1977), reprinted 1978 U.S.C.C.A.N. 5963, 6285.

43.     The Defendants did not comply with their duty to accurately and fully disclose their fee arrangements with the Debtor. An attorney is required to "lay bare all of [his] dealings" concerning compensation so that the court and parties are not forced to "ferret out pertinent information." *Dellutri Law Group*, 482 B.R. at 649, citing *In re Saturley*, 131 B.R. 509, 517 (Bankr.D.Me.1991). "Coy or incomplete disclosures" are "less than the full measure of disclosure" required under the bankruptcy code and Rules, even if they arise merely by way of negligence or inadvertence. *Saturley*, 131 B.R. at 517.

**COUNT I:  CLAIMS ARISING FROM MISCONDUCT BY DEBT RELIEF AGENCIES**
**11 U.S.C. §§ 105, 526, 527 and 528**

44.     Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

45.     A "debt relief agency" includes "any person who provides any bankruptcy assistance" to a consumer debtor for valuable consideration, subject to certain exceptions as set forth in § 101(12A). "Bankruptcy assistance" is defined in § 101(4A) as "any goods or services

sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing … with respect to a case or proceeding under this title."

46.     The Debtor is an "assisted person" as that term is defined in § 101(3) to whom the Defendants provided "bankruptcy assistance."

47.     Each Defendant is a "debt relief agency." See, *Milavetz, Gallop & Milavetz, P.A. vs. United States*, 130 S.Ct. 1324, 1324 (2010) ("attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies."); *Wheeler v. Collier,* 2014 WL 2155213, 1 (W.D.La. 2014) (Hicks, J.) (Collier and the law firm of McBride & Collier are debt relief agencies "because they provided 'bankruptcy assistance' to Wheeler, an 'assisted person,' for money in the form of attorney's fees.").

48.     Pursuant to § 526(a)(2), a debt relief agency shall not:

> make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

49.     Under § 528(a)(1), a debt relief agency must, within five (5) business days after the first date on which it provides any bankruptcy assistance services to an assisted person, but prior to the filing of such person's bankruptcy petition, execute a written contract which clearly and conspicuously identifies what services are to be provided and what fees are to be paid and the terms of the payment.

50.     Under § 528(a)(2), a debt relief agency must provide to an assisted person a copy of the fully executed and completed contract.

51.     Under § 526(c)(1), remedies for violations of §§ 526-528 may take the form of a civil action to recover actual damages, including fees already paid.  In case of intentional violations, or a pattern or practice of clear and consistent violations, the court may enjoin the violation or impose an appropriate civil penalty. <u>See</u>, § 526(c)(5).

52.     At the moment the Debtor filed her chapter 13 petition, all existing claims that the Debtor had against the Defendants became the property of her bankruptcy estate.  *Kane v. National Union Fire Ins. Co.,*  535 F.3d 380, 385 (5th Cir. 2008) ("Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition. Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed.")(internal citations omitted); *Reed v. City of Arlington,*  650 F.3d 571, 575 (5th Cir. 2011)("The Trustee became the real party in interest upon filing, vested with the authority and duty to pursue the judgment against the City as an asset of the bankruptcy estate."); *Matter of Educators Group Health Trust,*  25 F.3d 1281, 1284 (5th Cir. 1994)("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.").

53.     At the moment the Debtor filed her chapter 13 petition, she had claims against the Defendants arising under chapter 5 for their failure to comply with their pre-petition statutory duties as debt relief agencies, including:

a.      **The Agencies failed to execute and deliver a pre-petition written contract**. The Defendants failed to execute a written contract with the Debtor, as required by § 528(a)(1),

at any point prior to the filing of the Debtor's bankruptcy petition. Under § 528(a)(1), a debt relief agency must, within five (5) business days after the first date on which it provides any bankruptcy assistance services to an assisted person, but prior to the filing of such person's bankruptcy petition, execute a written contract which clearly and conspicuously identifies what services are to be provided and what fees are to be paid and the terms of the payment. In this case, the "no money down bankruptcy agreement" attached as **Exhibit 1** did not comply with that statute because it: (i) was not executed by the Defendants; (ii) did not obligate the Defendants to provide any services to the assisted person; and (iii) did not specify the terms of payment. In addition, the Defendants failed to comply with their pre-petition obligation under § 528(a)(2) to provide to an assisted person a copy of the fully executed and completed contract.

      b.    **Prior to the filing of the Debtor's petition, the Agencies advised the Debtor to make untrue or misleading statements in a bankruptcy document**. Under § 526(a)(2), a debt relief agency must not make any statement or counsel or advise any assisted person to make a statement in a document filed in a bankruptcy case that is untrue or misleading. In this case, the Defendants counseled or advised the Debtor to file the following documents in the bankruptcy case which were all signed by the Debtor prior to the filing of the petition and were filed contemporaneously with the petition:

      i.    **The Plan and Plan Summary**. The Plan and Plan Summary each contain untrue or misleading statements as they each state that the Defendants' compensation shall not exceed $2,800.00. See, § II.(B)(1)(b) of the Plan and Plan Summary. In truth, the Defendants devised an unlawful fee arrangement whereby they would receive more than the maximum amount allowed by law.

ii.    **Schedules**. The schedules filed pursuant to § 521(a)(B)(i) did not disclose that: (A) the Defendants were pre-petition creditors of the Debtor for all or a portion of the filing fee; or (B) the Debtor had agreed to reimburse the Defendants for the filing fee.

iii.    **Verification of Creditor Matrix**. The Debtor executed a verification of creditor matrix which did not list the Defendants as creditors in her bankruptcy case.

c.    **The Agencies filed certifications in the bankruptcy case containing untrue or misleading statements**.  In addition to unlawfully counseling or advising the Debtor to make untrue or misleading statements in documents filed in the bankruptcy case, the Defendants made their own untrue or misleading statements in the Fee Addendum and Fee Disclosure Statement, all in contravention of § 526(a)(2).  These documents were signed by the Defendants pre-petition and filed contemporaneously with the bankruptcy petition.  Moreover, the Defendants' signature on the bankruptcy petition constituted a certification that the attorney had no knowledge after an inquiry that the information contained in the schedules is incorrect.  In truth, the Defendants knew that the schedules were incorrect because they failed to disclose their unlawful fee arrangement.  Omitting the debtor's agreement to reimburse the filing fee constitutes a statement made in a document that the Defendants knew was misleading under § 526(a)(2).  The Defendants' failure to ensure that the Debtor fully and accurately disclosed her relationships, agreements, arrangements, payments and dealings with bankruptcy counsel brings into strong question the veracity of the Debtor's entire schedules and statements.

d.    **The Agencies misrepresented to the Debtor the services they would provide**. Under § 526(a)(3)(A), a debt relief agency must not misrepresent to any assisted person, directly or indirectly, affirmatively or by material omission, with respect to the services that such agency

will provide to such person. The "no money down bankruptcy agreement" did not contractually obligate the Defendants to render any services to the Debtor and therefore, by omission, the Defendants materially misrepresented the services that they would provide.

54.     Under § 526(c)(1), any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of § 528 shall be void.

55.     In this case, the "no money down bankruptcy agreement" is void under § 526(c)(1) because it did not comply with the material requirements of § 528. See, Memorandum Ruling entered on May 22, 2014, by the district court (Hicks, J.) in *Wheeler v. Collier,* 2014 WL 2155213 (W.D.La. 2014), in which it struck down Collier's "no money down" fee arrangement for cases filed under chapter 7 where Collier collects fees by debiting a debtor's bank account after the case is commenced based upon a pre-petition debit authorization. Judge Hicks held: (a) Collier's post-petition withdrawal of funds from a debtor's bank account for payment of fees violated the automatic stay provision of § 362(a)(6) of the Code; (b) the pre-petition debit authorization failed to comply with the requirements of § 528; and (c) the pre-petition debit authorization is void pursuant to § 526(c)(1).

56.     Section 526(c)(2) provides, in part:

(2) Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have--

        (A) intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person;
        ***

(C) intentionally or negligently disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.

57.     As set forth in detail above, in violation of § 526(c)(2)(A), the Defendants intentionally or negligently failed to comply with the provisions of §§ 526(a)(2)(made statement in a bankruptcy documents, and counseled or advised the Debtor to make a statement in a bankruptcy document, that was untrue or misleading), 526(a)(3)(A)(misrepresented to a prospective assisted person the services that such agency would provide), 528(a)(1)(failed to execute a pre-petition fee contract) and 528(a)(2)(failed to give assisted person a copy of the contract).

58.     As set forth in detail above, the Defendants intentionally or negligently disregarded the material requirements of the bankruptcy code or the Federal Rules of Bankruptcy Procedure applicable to them, in violation of § 526(c)(2)(C).  Specifically, pursuant to the provisions of §§ 330(a)(4)(B), 331, 503(b), 507(a)(2), and 1326(b)(1) and the Uniform Order, the Defendants filed the Fee Addendum.  That document, however, contained untrue or misleading statements.   In addition, the Defendants filed the Fee Disclosure Statement pursuant to Bankruptcy Rule 2016(b) and § 329 which also contained false statements as it did not disclose the true fee arrangement with the Debtor.

59.     The Defendants' conduct in this case has directly led to materially false certifications on the Debtor's bankruptcy filings.  Preparing bankruptcy schedules that are known to be false strikes at the bankruptcy system's core foundation of complete, full and accurate disclosure.  Knowingly submitting false and/or inaccurate documents to this court strikes at the duty of candor that a debt relief agency is required to exercise before this court. Strong sanctions

are warranted to deter this conduct and to punish the Defendants for their conduct.

60.     As a result of the foregoing, pursuant to §§ 105(a) and 526(c)(2), the Trustee seeks a judgment for: (a) all fees or charges in connection with providing bankruptcy assistance to the Debtor that the Defendants received, in the amount of **$4,594.00**; (b) actual damages suffered by the Debtor or the estate; and (c) reasonable attorneys' fees and costs in connection with this proceeding and the Trustee's investigation of the Defendants' conduct. *In re Huffman,* 505 B.R. 726, 765 (Bkrtcy.S.D.Miss. 2014)(debt relief agency was liable under § 526(c)(2) to chapter 7 trustee for "remittal of fees, actual damages, and reasonable attorney's fees and costs.").

61.     As a result of the foregoing, pursuant to §§ 105(a) and 526(c)(5), this court, on its own initiative, should impose an appropriate civil penalty against Collier for his intentional violations of § 526, or for his clear and consistent pattern or practice of violating that section.  At a minimum, the civil penalty should include restrictions on the ability of Collier to provide "bankruptcy assistance" to "assisted persons" in this district for compensation. *In re Parker,* 485 Fed.Appx. 989, 991-992, (11th Cir. 2012)(construing the imposition of a "civil penalty" under § 562(c)(5)(B) as a sanction and affirming the bankruptcy judge's authority to impose sanctions, including disbarment of an attorney, pursuant to Bankruptcy Rule 9011(c) and § 526(c)(5)(B) and its inherent authority).  The issue of whether this court should impose a civil penalty against Collier pursuant to § 526(c)(5)(B) is far different than whether he should be suspended or disbarred from practicing law, which is an issue currently pending before United States District Judge Robert G. James in *In re Glay Collier*, Case No. 14-mc-00021.  Courts are divided as to whether "an appropriate civil penalty" under § 526(c)(5)(B) can consist of injunctive relief as was the case in the disbarment of the lawyer in *In re Parker,* 485 Fed.Appx. at 991-992, or

whether it should consist solely of a monetary fine as was the case in *In re Dellutri Law Group*, 482 B.R. at 653-654 (imposing a financial penalty against a law firm which self-reported that it charged chapter 13 debtors in over 2,259 cases filed during a five (5) year period an unauthorized and undisclosed pre-petition "miscellaneous fee" in the amount of $50 per individual case and $100 per joint case, in violation of that court's standing order governing "no-look" fees). <u>Cf</u>. *U.S. ex rel. Administrator of E.P.A. v. CITGO Petroleum Corp.* 723 F.3d 547, 554 (5th Cir. 2013)(purpose of civil penalty under federal environmental laws is "punishment and deterrence."), *S.E.C. v. Tourre* 2014 WL 969442, 14 (S.D.N.Y. 2014)("The dual purposes of civil penalties [under federal securities laws] are to punish the individual violator and to deter future violations.")

62. The conduct outlined in this complaint warrants stiff sanctions, even if Collier could be considered a "first-time offender." Collier however, is decidedly not a first-time offender as he has a long history of ignoring, circumventing or failing to comply with: (a) orders issued by the district court and this court; and (b) statutory duties and injunctions. The only way to protect the public from additional harm inflicted by Collier is to simply prohibit him from rendering bankruptcy assistance services to assisted persons. Any civil penalty which permits Collier to continue to render bankruptcy assistance services to consumer debtors will be wholly ineffective in protecting the public.

## COUNT II: VIOLATION OF THE AUTOMATIC STAY
### 11 U.S.C. §§ 105 and 362

63. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

64. The Defendants' undisclosed fee arrangement with the Debtor constitutes a pre-petition claim against the bankruptcy estate whereby the Debtor would use post-petition property of the estate to satisfy the pre-petition claim.

65. The Defendants' pre-petition claim against the bankruptcy estate is subject to the automatic stay.

66. The Defendants' actions to collect the money prior to the entry of the discharge and without relief from the automatic stay, constitute violations of the automatic stay pursuant to § 362(a)(1) and (6).

67. A willful violation of the stay occurs when a creditor, with knowledge of the stay, attempts to obtain property of the estate without first obtaining relief from the stay from the bankruptcy court. *In re Chestnut,* 422 F.3d 298 (5th Cir. 2005). Furthermore, "[w]here there is actual notice of the bankruptcy petition, it must be presumed that the violation was deliberate or intentional." *Homer National Bank v. Namie,* 96 B.R. 652 (Bankr. W.D.La. 1989). In this case, there is no doubt that the Defendants had notice of the bankruptcy case before they attempted to collect the pre-petition debt. As such, the Defendants have wilfully violated the automatic stay provisions of the bankruptcy code.

68. The automatic stay has dual purposes. It protects the debtor from its pre-petition creditors by stopping "all collection efforts, all harassment, and all foreclosure actions" while permitting the debtor "to attempt a repayment or reorganization plan...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296–97. It similarly protects all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims. *Id.*

69.     In this case, the Debtor used property of the estate to pay her pre-petition debt to the Defendants.  As a result, the estate suffered a diminution in value.  *Barron v. Countryman,* 432 F.3d. 590, 597 (5th Cir. 2005)(in a chapter 13 case, "money paid to debtor's counsel in the post-petition period constitutes estate property.").

70.     The trustee has standing to pursue a claim for damages to the estate for the Defendant's violation of the automatic stay as one of the purposes of the automatic stay is to protect the bankruptcy estate which the trustee is statutorily charged with administering.

71.     Pursuant to § 362(k), "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages."

72.     According to the Fifth Circuit, the term "individual" as used in § 362(k) includes individuals other than the debtor, such as creditors, who claim injury from an automatic stay violation. *St. Paul Fire & Marine Ins. Co. v. Labuzan*  579 F.3d 533 (5th Cir. 2009).  In *St. Paul*, the Fifth Circuit assumed, but did not decide, that a trustee has standing to pursue a claim under § 362(k).  The issue before the Fifth Circuit was whether a creditor also had a right to pursue a claim for violation of the stay under § 362(k) or whether that right belonged exclusively to the trustee.  The Fifth Circuit held: "assuming the Trustee had standing to assert a § 362(k) claim against St. Paul, that standing was not exclusive." *Id.* at 545.  See also, *Matter of Garofalo's Finer Foods, Inc.*  186 B.R. 414, 439 (N.D.Ill. 1995) ("a chapter 7 trustee is an 'individual' for the purposes of [§ 362(k).]").  As the court stated in *Garofalo's*:

> [T]here are many situations in which a creditor willfully violates the automatic stay by acting to take possession of estate property. Under section 704(a), the trustee is obligated to recover the property for the benefit of the estate. See 11 U.S.C. § 704(a) (the trustee is

required to "collect and reduce to money the property of the estate....."). If the trustee incurs legal expenses in recovering such property and cannot recover his fees from the party that violated the stay, either the estate will be depleted by the amount of the trustee's costs of recovery or the trustee will not be reimbursed for those costs. Either of these results is clearly undesirable. By adopting a broader definition of "individual" (i.e., one based upon the second portion of the Black's Law Dictionary definition), the court avoids these undesirable results while at the same time ensuring that the goal Congress certainly sought to create (i.e., enforcement of the automatic stay) and the incentive it created to achieve that goal (i.e., the possible recovery of attorney's fees) are properly preserved.

*Garofalo's Finer Foods, Inc.* 186 B.R. at 439.

73. A civil contempt proceeding may be brought against a party who violates the automatic stay. *All Trac Transportation, Inc. v. Transportation Alliance Bank,* 306 B.R. 859, 872 (Bankr. N.D. Tex. 2004). "The provisions of § 362(a) of the Bankruptcy Code stand as a court order, the automatic stay constituting a Congressionally-imposed, self-executing injunction." *Id.* at 875. Considering the Defendants' attempt to collect a pre-petition debt from the Debtor's estate, to the prejudice of all other creditors, judicial sanctions are in order.

74. As a result of the foregoing, pursuant to §§ 105(a) and 362, the Trustee is entitled to a judgment: (a) declaring that Defendants' conduct constitutes violation of § 362(a)(1) and (6); (b) awarding actual damages, including costs and attorneys' fees; (c) awarding punitive damages; (d) imposing sanctions against Defendants; and (e) awarding all fees or charges that the Defendants received from the estate, in the amount of **$3,236.00** (consisting of $2,800 paid by the trustee, $281 paid by the Debtor for filing fees, and $155 paid by the Debtor pre-conversion).

## COUNT III:  AVOIDANCE AND RECOVERY OF POST-PETITION TRANSFERS
## 11 U.S.C. §§ 105, 549, 550 and 551

75. Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

76.     This count is premised on the Trustee's powers under § 549 which provides that a bankruptcy trustee can avoid a transfer of property of the estate that occurs after the commencement of the case if it was not authorized under the bankruptcy code or by the bankruptcy court.

77.     Following the commencement of the bankruptcy case, property of the estate was transferred (collectively, the "**Transfers**") to or for the benefit of each of the Defendants.  The Transfers include, but are not limited to, the following:

    a.     **$281.00** to the Defendants as set forth in the receipts attached hereto as **Exhibit 2**.

    b.     **$155.00** to Collier as set forth in the receipts attached hereto as **Exhibit 5**.

78.     Each Transfer occurred after the date of the filing of the petition.

79.     Each Transfer involved money that constituted property of the estate.

80.     Each Transfer was not authorized under the bankruptcy code or by the bankruptcy court.

81.     Each Transfer is recoverable from the Defendants pursuant to § 550(a) of the code.

82.     As a result of the foregoing, pursuant to §§ 549, 550(a) and 551, the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the estate of the Debtor.

83.     With respect to any avoided transfer, the Trustee seeks the entry of a judgment awarding any remedy available under § 550, including the recovery, for the benefit of the estate, of the entire transfer avoided or the recovery of a money judgment in an amount equal to the value of the property transferred.

**COUNT IV:  DISQUALIFICATION OF COUNSEL AND DISGORGEMENT OF FEES**
**11 U.S.C. §§ 105, 329 and Bankruptcy Rules 2016 and 2017**

84.     Plaintiff reasserts and realleges the allegations contained in the foregoing paragraphs as though fully restated herein.

85.     The Trustee seeks the entry of an order disqualifying Collier from continuing to serve as the Debtor's counsel in this case.

86.     This court has the power to disqualify Collier from serving as Debtor's counsel in this case.  In fact, this court (Callaway, J.) disqualified Collier from serving as counsel in *In re Jacqueline Rene Broad,* Case No. 12-11993.  See also, *In re Meridian Auto. Systems–Composite Operations, Inc.*, 340 B.R. 740 (Bankr.D.Del.2006) (a motion to disqualify counsel "is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A)"). See, e.g., *Century Indem. Co. v. Congoleum Corp.* (*In re Congoleum Corp.*), 426 F.3d 675, 686 (3d Cir.2005)("One of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it."); *In re Johore Inv. Co.*, 157 B.R. 671, 674 (D.Haw.1985)("[A] motion to disqualify counsel of a major secured creditor is a matter integrally tied to the administration of the estate, and disposing of such a motion is clearly a necessary function of the bankruptcy judge in presiding over the orderly administration of the estate.").

87.     In a chapter 7 case, a debtor's lawyer is not employed by the estate.  Nevertheless, a bankruptcy court has the inherent power to preside over the disqualification of a lawyer representing a party in a bankruptcy case.  "Federal courts admit and suspend attorneys as an exercise of their inherent power [.]" *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985).

88.     In addition to its inherent power, this Court has the authority to examine the transactions between a debtor and her counsel pursuant to the provisions of 11 U.S.C. §§ 105(a) and 329 and Bankruptcy Rules 2016(b) and 2017 and to enter appropriate orders for relief regarding the attorney-client arrangement between a debtor and his or her counsel.

89.     The disclosure requirements imposed by § 329 are "mandatory not permissive." *In re Bennett*, 133 B.R. 374, 378 (Bankr.N.D.Tex.1991). Accordingly, an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor, *id*. at 379 and "a court may order an attorney sua sponte to disgorge funds already paid to the attorney." *In re Investment Bankers, Inc.* 4 F.3d 1556, 1565 (10th Cir. 1993); *In re Nabavi* 2014 WL 3939595, 3 (M.D.Fla.,2014)(" The purpose of this rule mandating disclosure is to protect both the debtor and the creditor, with noncompliance hindering the court's ability to make a meaningful review of an attorneys' request for fees from the bankruptcy estate. Accordingly, an attorney is at risk that all compensation may be denied for failing to disclose such compensation.")(internal citations omitted). *In re Park–Helena Corp*., 63 F.3d 877, 882 (9th Cir.1995)(denial of all fees as sanction for attorney nondisclosure was not an abuse of discretion); *In re Parklex Assocs., Inc*., 435 B.R. 195, 209–10 (Bankr.S.D.N.Y.2010) (compensation may be denied when attorney misrepresents facts and deceives the court, citing 3 Collier on Bankruptcy ¶ 329.04[1][b] ); *In re Teknek, L.L.C*., 394 B.R. 884 (Bankr.N.D.Ill.2008) (compensation may be denied when attorney misrepresents facts in order to deceive court).

90.     Local District Court Rule 83.2.4, made applicable to this case by virtue of Local Bankruptcy Rule 9029-3, provides:

This court hereby adopts the Rules of Professional Conduct of the Louisiana State Bar

Association, as hereafter may be amended from time to time by the Louisiana Supreme Court, except as otherwise provided by specific rule of the courts.

91.     Rule 1.7(b) of the Rules of Professional Conduct of the Louisiana State Bar Association provides, in pertinent part, as follows:

(a)     Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1)     the representation of one client will be directly adverse to another client; or

(2)     there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person *or by a personal interest of the lawyer*.

(b)     Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)     the representation is not prohibited by law;

(3)     the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)     each affected client gives informed consent, confirmed in writing.

Louisiana State Bar Articles of Incorporation, Art. 16, Rules of Prof. Conduct, Rule 1.7, La. R.S. 37:222 (emphasis added).

92.     Rule 8.4 of the Rules of Professional Conduct provides, in pertinent part, as follows:

It is professional misconduct for a lawyer to:

(a)     Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b)     Commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c)     Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d)     Engage in conduct that is prejudicial to the administration of justice;

Louisiana State Bar Articles of Incorporation, Art. 16, Rules of Prof. Conduct, Rule 8.4, La. R.S. 37:222.

93.     The Defendants' undisclosed fee arrangement with the Debtor was antithetical to the disclosure presented in their Fee Disclosure Statement and the Fee Addendum and directly violated this court's Uniform Fee Order and ¶ 4 of the confirmation order and created an unwaivable conflict of interest.

94.     Collier's pre-conversion fee arrangement with the Debtor (which required her to pay the fee post-conversion) is also problematic. Collier's pre-conversion fee arrangement is governed by § 348(d) which provides that a claim against the estate or the debtor that arises after the petition but "before the conversion of the case should be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."

95.     Collier's fee arrangement triggered the provisions of Rule 1.7(a)(2)(prohibiting a lawyer from representing a client if there is a "significant risk" that the representation will be "materially limited" by a "personal interest of the lawyer") and Rule 8.4(a)(defining professional misconduct as the violation of the Rules of Professional Conduct).

96.     Collier's fee arrangement presents an inherent conflict of interest as it pits the Debtor's best interests against Collier's best interests. As the Debtor's lawyer, Collier is supposed to zealously enforce the debtors' rights, including the protection afforded by the

automatic stay of collection activities. Collier's fee arrangement, however, advances his own interests above the interests of the Debtor.

97.     Although Rule 1.7(b) provides an exception to the prohibition against a conflicted lawyer representing a client, it does not apply in this case.  First, within the meaning of Rule 1.7(b)(1), Collier cannot "reasonably believe that he will be able to provide competent and diligent representation" because his post-petition collection activities of his pre-petition fees created claims in favor of the Debtor against Collier (similar to the claims asserted in *Wheeler*) for violation of federal law, including specifically the automatic stay, see § 362(a)(1) & (6), and the discharge injunction, see § 727(b) & § 524(a). Second, within the meaning of Rule 1.7(b)(4), the conflict is not subject to waiver because no consumer debtor is capable giving "informed consent" for a waiver of a conflict when that debtor's own attorney is acting as a creditor to collect pre-petition fees which are themselves dischargeable and subject to the automatic stay.

98.     In this case, no attempt was made by the Debtor or Collier to invoke the statutory procedure to approve the reaffirmation agreement as set forth in § 524(c).  Of course, had they bothered to comply with that statutory provision, a problem would have arisen because in filing and presenting the reaffirmation agreement to the court, the debtor's attorney is supposed to be representing the best interests of the debtor which he cannot do if he is simultaneously representing his firm's own interests as the other party to the transaction. A reaffirmation of an otherwise dischargeable debt is a desirable option when the debtor's continued benefit from a good or a service (usually a home or a car) justifies the debtor's continuing personal liability on such debt. Furthermore, a reaffirmation agreement is legally enforceable only if the debtor's attorney signs an affidavit that the continuing personal liability does not pose an undue hardship

to the debtor or her dependent; otherwise, the agreement is enforceable only if the bankruptcy court makes the same finding independently in addition to finding it to be in the debtor's best interest. 11 U.S.C. § 524(c), (d)(2). Determining what is an undue hardship for and/or the best interest of a debtor obviously requires close judgment calls requiring an unbiased evaluation of the potential remaining liability under a pre-conversion contract compared to the value of the good or service to be retained. Under Louisiana Rule of Professional Conduct 1.7(b), it would be impossible for Collier to reasonably believe that he is able to provide an unbiased opinion as to the value of the remaining services he must provide pursuant to a retention contract.

99. The Trustee has standing to seek the disqualification of Collier as the Debtor's counsel. *Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671, 673 (5th Cir.1977) ("Appellant has standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations in the case."); *In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976)("When an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention.").

100. In the Fifth Circuit, courts initially look to the district's local rules when considering motions to disqualify. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir.1995). In the Western District of Louisiana, LR 83.2.4 provides that the Louisiana Rules of Professional Conduct shall apply. The Louisiana Rules, however, "are not the sole authority governing a motion to disqualify" in federal cases. *FDIC*, 50 F.3d at 1312. "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543

(5th Cir.1992). Because the Fifth Circuit recognizes the American Bar Association Model Rules of Professional Conduct as the national standard, this court should apply both the ABA Model Rules and the Louisiana Rules in its analysis. *In re ProEducation Int'l, Inc*., 587 F.3d 296, 299 (5th Cir. 2009).

100.    The exhibits attached to this complaint provide evidence of a specifically identifiable appearance of improper conduct which proves the existence of a conflict of interest within the meaning of Rule 1.7(a)(2) of the Louisiana Rules and the ABA Model Rules. *Forsyth v. Barr*, 19 F.3d 1527, 1546 (5th Cir. 1994) (placing the burden of establishing a conflict on the party seeking disqualification).

102.    This court should examine the transactions in this case between the Debtor and her counsel and pursuant to the provisions of 11 U.S.C. §§ 105(a) and 329 and Bankruptcy Rules 2016(b) and 2017, the court, on its own initiative, should require Collier to disgorge all fees collected from the Debtor, including all fees collected during the chapter 13 case and by virtue of the post-petition ACH debit authorization.  This court (Callaway, J.) previously entered orders compelling the Collier to disgorge all fees collected from chapter 7 debtors pursuant to pre-petition or post-petition ACH debit authorizations.  See, *In re Jackson,* 2014 WL 3722019, 6 (Bkrtcy.W.D.La. 2014)("After examining the transactions in this case between the Debtor and his counsel and pursuant to the provisions of 11 U.S.C. §§ 105(a) and 329 and Bankruptcy Rules 2016(b) and 2017, the court, on its own initiative, hereby requires Collier to disgorge all fees collected from the Debtor by virtue of the post-petition ACH debit authorization."); See also,  *In re Patrick  2014 WL 3722005* (Bkrtcy.W.D.La. 2014) (same) and *In re Green*  2014 WL 3724986, 6 (Bkrtcy.W.D.La. 2014) (same).

103.     As a result of the foregoing, pursuant to §§ 105(a) and 329 and Bankruptcy Rules 2016(b) and 2017, this court should enter a judgment: (a) disqualifying Collier from serving as the Debtor's counsel; and (b) awarding to the Trustee in part and the Debtor, all fees or charges received by the Defendants, in the amount of **$4,594.00** (with $3,236.00 going to the Trustee for reimbursement of estate funds and the remainder to the Debtor for post-conversion payments).

## RELIEF REQUESTED

WHEREFORE, PLAINTIFF PRAYS that, after due proceedings, this court enter a judgment:

(a)     against all Defendants, or Collier, as the case may be, for all relief requested above in ¶¶ 60, 61, 74, 82, 83, and 103;

(b)     awarding judicial interest under applicable law from the date of judicial demand or such other time period as may be allowed by applicable law; and

(c)     for all other legal and equitable relief which Plaintiff may be entitled to receive in connection with the litigation.

Respectfully submitted,

**WIENER, WEISS & MADISON, A P.C.**
P.O. Box 21990
Shreveport, Louisiana 71120-1990
Telephone:     (318) 226-9100
Telecopier:     (318) 424-5128

By:/s/ John S. Hodge
John S. Hodge, Bar No. 18951

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing on the following parties:

> *U.S. Department of Justice, Office of the United States Trustee*
> U.S. Trustee – Region V
> U.S. Court House
> 300 Fannin Street, Suite 3196
> Shreveport, LA 71101
>
> *Counsel for Debtor*
> Glay H. Collier, II
> The Collier Law Firm LLC
> 920 Pierremont, Suite 511
> Shreveport, LA 71106
>
> *Counsel for Glay H. Collier*
> Bradley L. Drell
> Gold, Weems, Bruser, Sues & Rundell
> 2001 MacArthur Drive
> P.O. Box 6118
> Alexandria, LA 71307-6118

by depositing same in the United States Mail properly addressed and with sufficient postage affixed and/or by electronic mail and/or by electronic notice, and all other persons who have requested notice via the PACER/ECF/CMS system.

Shreveport, Louisiana, on August 25, 2014.

/s/ John S. Hodge
John S. Hodge, Trustee
